I will hear argument now in number 2019-1931 and 1975 Parsons Evergreen, LLC v. Secretary of the Air Force. And first we have Mr. Hamrick. And I doubt very much as to whether you're going to end up with 10 minutes for rebuttal. It's kind of unusual, but we'll see where it goes. Well, may it please the court, the clerk indicated this morning that the court may have some issues with our allocation of time. We aligned our time to match the issues in our opening brief, the five minutes, and then the reply brief, 10 minutes, but we are happy to allocate the time in whatever way is most helpful to the court. And of course, focus on the issues in which the court is most interested. For example, if the court is okay with us talking for 12 minutes about any issue in the appeal, including the government's issues, we're happy to do that and reserve three minutes for rebuttal. Okay, well, we're not going to try to micromanage your time allocation, but why don't you just start with the main appeal and we'll see where we go. Thank you. Again, my name is Cameron Hamrick and I represent Parsons Evergreen or an IDIQ contract awarded by the Air Force to Parsons and a delivery order issued by the Air Force to Parsons under that contract for the design and construction of two buildings in an Air Force base. Parsons' appeal involves three claims and all three claims involve fundamental errors of law. The first claim is called the TRIARC claim where the board decided entitlement in Parsons' favor based on a theory involving paint that no one had ever raised prior to the board's decision. The board then denied Parsons any recovery claiming there was no information to estimate the paint cost. That claim is incorrect. The evidence was in the record, but because the board adopted a novel quantum theory, Parsons had no reason to cite that evidence. Remarkably, when Parsons presented the evidence and its motion for reconsideration, the board still denied recovery. The board erred as a matter of law. I think your problem here is that, as you just said, this theory of recovery that the board articulated was not one that you made before. So why aren't you kind of stuck with the fact that you didn't raise that particular claim? Well, I think there's two answers to that. One is the board never, in fact, no one, the Air Force, Parsons, or the board ever raised the board's unique theory of quantum until the very end of the litigation process. The parties had no chance to brief this issue. If the board had raised it, if the Air Force had raised it, Parsons would have identified the evidence. And I think the second answer to that is it becomes irrelevant by the time of the motion for reconsideration because the board acknowledged that the evidence, in fact, existed. But the problem, it seems to me, is that it's not a new theory of quantum. It's a new theory of liability. Your original theory of liability is that you were allowed to apply the Sherman-Williams paint. You didn't have to use the TRIAC. So the board says, no, you're wrong about that. You couldn't use Sherman-Williams, but they confused you by telling you at one point that you could. So that seems to me a different theory of liability than you'd articulated in the beginning. And I will agree with that. And what happened after the board found for entitlement, in other words, the recovery of the paint costs, the board said, you know what? We're left with nothing on quantum. It decided entitlement, that's water under the bridge. We're not contesting that. The Air Force is not contesting that. But the board then turned to the issue of quantum and said, I don't have any evidence. And our point is, number one, the evidence was in the record, but Parsons would have easily pointed to it if the board had simply given the parties a reason to address the issue before he issued his decision, as he did in another case, which we cited in our brief. And again, by the time of the motion for reconsideration, entitlement is set. But the board's conclusion that there is no quantum evidence is a mistake of fact. And we also think it's a mistake of law because under the, this court's predecessor, Southwest Electronics versus United States case at 655 S. Second 1078, the board was under a heavy obligation to provide compensation. So to say that you didn't present it the first time around, I'm not going to take it now, even though it's here, is we think in clear defiance of the board's heavy obligation to far above substance. Well, on the question of whether or not, Judge Clevenger, whether this was a novel theory that got sprung on you unfairly, I thought the board made a finding that there was a patent ambiguity here the contractor should have noticed. The contract clearly says the spec prevails over the drawings. And so the notion that you thought you could apply the paint doesn't have any legs. Well, I think the board also found that number one, that the Air Force created confusion throughout this process. But at one point, Parsons prepared a architect, an ASI 13, stating that it was going to provide triart to the VQ building, and the contracting officer signed it. And on that basis, I believe Parsons created a quantum theory and an entitlement theory based on the right to apply triart. So I think they had a good faith basis to build that quantum approach. Well, unless there are further questions on this, why don't you move on to the next claim? The next claim is the structural brick claim involves Walsh, one of the buildings. The board again ruled for Parsons on entitlement. I know that. On that claim, help me out with mod two release. In this case, there was a mod two release. And what got released? What happened? There were issues released, including the time it took to reconfigure and negotiate the proposed structural brick design. But if you look at the mod two release, it does not talk about construction costs. And therefore, the board held that the cost of construction related to the structural covered by the mod and the Air Force has not challenged that in this appeal. What does it mean to say release the time? Judge Clevenger, you're kind of faint. Oh, can you hear me? That's better, Judge. Yeah. I don't know what you mean by saying a release of the time. As I understood the mod two release, Parsons agreed to give up using structural brick and to go forward with the double wall with fixes so as to solve the progressive collapse. Is that correct? I am not sure that's exactly correct. But what I do know is that... Why is it not exactly correct? Because the point is that the mod did not cover construction costs involved with the structural brick design. And I believe that's what the board held. And that's why I allowed Parsons to go forward and find entitlement on the structural brick design. And if I'm correct, I don't think that the government is arguing that the mod two release is broader than that. Is it? I have not raised that issue in this appeal. No, but the question in my mind was whether or not what you were doing in the mod was just saying you were giving up a right you might have to have proceeded with structural brick. And that you were agreeing to go forward with the double wall with the fix. I think that's right. But I think that it was carefully worded. And again, they left out construction. Right. But the basis for you having an equitable adjustment claim would be that you had a right to proceed with your claim as you wanted to do it with structural brick. Right. That's the basis on which you would have an equitable adjustment claim under the law. But if you gave up your right to proceed with your proposed structural brick and instead agreed to go forward with the double wall, the proposal, then why aren't you stuck with the board's way of looking at quantum for that? Because the board ruled that mod two did not cover the entitlement to which Parsons, for which he ruled they were entitled to receive, and the Air Force has not challenged that here in this appeal. You didn't give up your construction cost claim. It didn't cover construction costs. But the question is whether it covers construction costs under your theory or under the other theory. I don't think it matters. You were allowed that the board would give you construction costs for how much more it cost you to do it with the double wall with the fix. Isn't that? Mod two expressly covers delays or costs arising from varying design approaches including delays in reviewing approaches. That was the several months where the parties debated whether Parsons could go ahead with the structural brick design. Okay. Help me there. So that's what it covers. Did you release a claim to any of that time? We did not. It does not mention construction costs. What's the release? It expressly covers delays or costs arising from varying design approaches including delays in reviewing approaches. That's design in the time to review design. That has nothing to do with either the double wall construction or the structural brick construction. What did the mod release? Did you give something up? Who gave what up? That's what a release is. That is at the board's appendix. We don't have the mod in the record, but who gave what up in the release? You gave up the claim to increase design costs, right? Yes. Extended the period of performance 126 days that accounted for 126 days associated with structural brick discussion. If you gave up the claim to increase design costs, what's the $776,000 you got given? That was for the time to review the varying design costs during those months when the parties were hashing it out. So that was the time to review, and you gave up what? I guess we gave up the right to come after them for anything other than the extension of time they gave us for that period of time where they were negotiating. But also, in the mod, you agreed to go forward with original Baker 30% design progressive collapse, correct? Yes. Hello? The board's decision doesn't talk about which- I know that. You have the mod in front of you. I don't have it in front of me because you didn't put it in the record. Well, it's at appendix 46, the board's decision. PE was willing to accept the 120 extension plus $100,000 for a six-month extension with no money. To add greater details to the understanding of this agreement, Parsons is estimating the following impacts that have been absorbed to date and will have to be absorbed with the execution of a contract mod under the proposed resolution mod. They listed $100,000 in actual redesign expenses and some other costs for the 35% design and signed a release of claims for direction given on the design effort to date. That's the scope of the release. Maybe you should move on to your third- Sure. The third claim is the delayed payroll claim. Judge Clark issued a minority opinion explaining that this claim is based on the government's of FAR 22.406-1 dealing with enforcement of labor standards and concluded that payroll reviews must be prompt or the entire regulatory scheme becomes meaningless. A majority of judges disagreed finding that FAR 22.406-1 does not provide contractors a remedy and they relied on Cessna Aircraft versus Dalton 126F3R1442 for the proposition that the primary intent of a statute of regulation must be to protect or benefit a class of persons. Why don't you address first the jurisdictional issue as to whether your appeal with respect to that item is timely? Absolutely. What the board did was to create two separate dockets, two separate appeals from the contracting officer, and this one was put in a separate docket. And with respect to that appeal, you were not timely. So why isn't that fatal to you? Well, the government relies solely on the fact that the ASPCA assigned a different number, but the board explained that it assigned a separate number for reasons of judicial efficiency and clarity, even though it was fully litigated under the present appeal, establishing that the delayed payroll claim was not a separate case. In fact, that claim was litigated with all of Parson's other claims at the same trial involving the same parties, the same contract, and the same judge, and significantly all under the same number assigned by the board at the outset, 58634. The board only assigned a different number at the very last minute. And also, all of Parson's claims... Mr. Hammer, can I... This is Judge Hughes. Can I interrupt just a minute? Sure. If the board had at the outset, even though you filed this as one case, divided this up into two cases, into the payment claim we're talking about and the rest of the case, and from the outset... I think if they had conducted separate trials, had separate Rule 4 files, separate post-hearing briefs, and rendered separate judgments all under the same number, yes. Even though they're all under the same set of facts. Same contract, same parties, same Rule 4 files, same transcripts, everything, same judge. Right. So, what difference does it make that the bifurcation came at the end of the process rather than at the beginning of the process if they decided to bifurcate? Because they mitigated everything together and made an administrative decision to assign a number at the very end of the case. And the majority even showed that the two decisions are inextricably linked by adopting the material findings of fact in Judge Clark's main decision as part of its decision. And also, all the person's claims arose... Mr. Hamrick, you have to stop talking. I know it's hard because we're all on the phone, but as soon as you hear me, you have to stop talking. I don't understand what difference it makes that they adopted the original thing, his original findings, if they separated it out and bifurcated as a separate decision. They're allowed to do that, aren't they? They're allowed to do that. And isn't it clear that once it's a separate decision, it has to be appealed independently? I would say it's not clear. Well, what support do you have for that? I have... I think you answered my prior hypothetical that if they'd bifurcated at the outset, you would have had to appeal independently. I just don't understand what difference it makes if they bifurcated at the very end. Well, all the person's claims arose from the same contracting officer's final decision, and we cited precedent from this court. That would be true, too, if they had bifurcated at the beginning, right? If they had bifurcated at the beginning, and again, I would agree with that if they had conducted this as two separate cases, but they did not. But they wrote two separate opinions at the end, right? At the very end, they did. Okay. Well, unless there are other questions, maybe we should pause here and hear from the government on the main appeal, on the cross appeal. Hearing no further questions for the moment, Mr. Hamrick, thank you. Mr. Kaipura, if I'm pronouncing that correctly, why don't you go ahead? Yes, thank you, and good morning, Your Honors, and may it please the court. And as Your Honor indicated, absent questions from the court on the issues raised by Parsons in its appeal, I'd like to move directly to the jurisdictional question raised in our cross appeal, and time permitting, also move, discuss the cost-reasonable issue as well. I have a couple of questions about the structural brick claim, and I don't understand why, having been forced to abandon an approach that they wanted to take, that is using structural brick, they weren't entitled to the difference between what the performance did cost, construction performance did cost, and what it would have cost if they'd gone with the structural brick design in the first place. Yes, the difference that the board highlighted, Your Honor, was that the cost estimate that Parsons provided in its brief did not line up with the entitlement that the board found. Parsons presented a cost... Hold on, hold on. You're avoiding Judge Dike's question. Judge Dike was asking whether or not the board didn't apply the wrong legal test. Metric opinion cited by Parsons, they're saying in the fact that they're entitled to an act of law adjustment, and they make that legal argument in their brief, you did not even respond to that argument in the reply brief. Your Honor... Why is it that the facts here didn't entitle them to the relief they want under metric or the quantum assessment you would have, which is the one Judge Dike just described? Well, Your Honor, the board found that they were entitled to construction costs, but that they didn't present them properly in their brief and in their argument before the board. What do you mean they didn't present them properly? Are we talking about the same claim? We're talking about the structural brick claim. They argued for the difference in what it would have cost them to do it with structural brick and what it actually did cost them. What's the matter with that? Your Honor, the board found that the reason that Parsons presented for using structural brick was not entirely tied to the issue of progressive collapse. I have no idea what you're talking about. They argued they were entitled to use structural brick and it would have cost them a lot less to do it, right? Yes. So why aren't they entitled to recover the excess costs that they incur? Because, Your Honor, the board found there were two different issues presented with regard to the structural brick. One was the design and whether or not they were entitled to switch from the 35 percent design that was given to them, which was this double wall design, whether or not they were allowed to switch to the structural brick. And the board found that they were and they were compensated for that. That was the $700,000 and change that they were given. That's the excess design costs, right? We're not talking about that now. We're talking about the excess construction costs. Correct. And the board found that the difference in construction costs was tied to the issue of progressive collapse. The 35 percent design that was originally given to Parsons as part of the project did not account... That's the dividing point right there when you say that they said it was the cost were designed to how much more it cost to shore up the 35 percent design. The other side's arguing, no, that's not the wrong approach. Yes, Your Honor. And the board... Why didn't you respond in your brief to their legal argument that they were entitled, as an equitable judgment, they were entitled to the metric from the Court of Federal Claims test for how you compute the costs? Your Honor, we responded to this issue that they had not presented their costs properly because they were claiming that they were entitled to the difference between, the entire difference their structural brick design and what it actually cost to construct. What's wrong with that theory? What's wrong with that theory? The board found that Parsons' own expert explained that their proposal of structural brick was not entirely tied to the rationale of entitlements that the board found, which was correcting for this issue of progressive collapse. So what the board was finding was that Parsons was entitled to damages, but only to the extent that those damages or those costs, excuse me, corrected for the increased construction costs to correct for the progressive collapse issue. And that's not what they... Okay, let me give you a hypothetical. Suppose I contract with the government to build a building and I have a choice between structural brick and some other method. And the government says, no, you can't use structural brick. And I say, the other method that you're requiring me to use cost me a million dollars extra in construction costs. Are they not entitled to recover that million dollars? They would be entitled in that hypothetical, Your Honor, but I don't believe that lines up with what's happening in this case. All right. I don't have any further questions on this, unless my colleagues do, why don't we move on to your other arguments? Okay. Thank you, Your Honor. Turning to the jurisdictional question, the ASBCA determined that it had jurisdiction over this case pursuant to the Contract Disputes Act. And as support for that finding, the board cited to this court's 2011 Slattery decision, and this was a legal error. Slattery does not apply to the instant matter because the statute at issue in this case was the Tucker Act and not the CDA. The court confirmed... The board said that this was a NAPI contract, even though on the face of the contract, the contract was entered into with the Air Force, not with a NAPI. So why is this a NAPI contract? Why are we talking about this? Because, Your Honor... In the first place, there was funding from a NAPI source, but we know from Slattery that where the funding comes from is irrelevant to a jurisdictional question. Well, Your Honor, two responses there. First is that it was a NAPI contract because the NAPI was providing the funding for the contract, and the Air Force Material Command was simply providing the contracting services in terms of the contracting officer. Right. Other than the funding, why else would it be a NAPI contract? Is there any other basis? Well, Your Honor, the contract was entered into on behalf of the Air Force Services Agency, which is a NAPI. So the record for that... I'm sorry. Was there a second question I didn't hear? Judge Hughes is asking, is there support from the fact that the contract was entered into by NAPI? Yes, Your Honor. The contract itself specified that only NAP funds would be used, which is an indication... That's not what you just said, though. You just said that the contract was entered into on behalf of the NAPI. All I can tell is that the contract documents specify that non-appropriated funds are to be used for this, but they don't say anything about who this is going to be entered onto in behalf of or who is the contracting entity. So do you have something besides the funds evidence, which is a couple of lines in the task order to suggest that it was entered into on behalf of NAPI? Well, in the contract itself, Your Honor, there's the reference to the Air Force Services Agency. I believe there is a reference to an individual who is a point of contact from the Air Force Services Agency, and then the source of the funding is our primary support for the fact that the contract was being entered into on behalf of NAPI. Is there any language that suggests that the contract is strictly limited to non-appropriated funds and that no appropriated funds can or shall be used for this contract? Yes, Your Honor. Where? I'm finding the appendix site as we speak. Because... In the joint appendix at 804, it states that only non-appropriated funds were allocated for the contract. There was no other source of funding, and the Air Force Material Command does not have access to those funds. Where it says only non-appropriated funds, I'm looking at 804. Yes. Where it says only, then the word only doesn't appear. Well, the... This is the same evidence we've been talking about that you're over-reading. It just specifies a non-appropriated fund source, but it doesn't limit it to non-appropriated funds, and it doesn't say anything about who the contract entity is. Do you have anything else that... Well, that's the primary evidence in the contract, Your Honor. It's the only evidence. It's the only evidence, right? You keep saying it's the primary evidence, but when I ask you for more, you don't have any. So this is it. Yes. That's the only evidence in the contract. So then can I ask you the follow-up question? Do you have any legal authority that you cited? I didn't see any in your brief that suggests that just because funding may come from a non-appropriated fund, that it's necessarily a contract with the NAFI. Well, Your Honor, the issue here... Well... I'm asking about precedent. This is a simple question. Do you have case law to cite to me or not? Because I think you've all jumped over and got straight to the question of saying, this is a NAFI, because it's a really interesting issue post-flattery, but it's not clear to me at all that this is a NAFI. And the fact that there's non-appropriated funds doesn't solve for me the question of whether this is a contract with the NAFI or it's with the contract with the Air Force itself that relies on non-appropriated funds, which seems to me under our case law to be a big distinction. Understood, Your Honor. I think the issue arose when the board itself made the finding that the AFSDA was the counterparty to the contract and asked for supplemental briefing. I get that. But what evidence did the board rely on? Again, this is what I think happened. The board just jumped over this too and decided, well, it looks like there's non-appropriated funds, so it must be a non-appropriated fund entity. But there's nothing in the IBIQ parent contract or the task order that suggests that it's directly with the NAFI. Yes, that's correct, Your Honor. Go ahead. Okay. The board, again, I think this goes to the procedural process that happened where this issue was raised on supplemental briefing based on the board making the determination that it was a NAFI and that the NAFI was the counterparty. So the record... The board was eager to get to the issue. Does it look like the board manufactured an issue here? I wouldn't characterize it as manufacturing an issue, Your Honor. We do believe that the NAFI, that the AFSDA was the counterparty and that it is a NAFI. But I would agree with you that there is limited discussion of that point both in the decision and the record. However, if that is... Did you... Can I interrupt again? In the supplemental briefing at the board, I don't think we have that in the record or we don't have it fully in the record. Did the government put forth evidence about further evidence beyond these contract documents about why the contract was with the NAFI? Did you read the supplemental briefs? Yes, Your Honor. But again, the primary issue that was focused on there was this question over slattery. So... Well, yes, but that's the problem. Sorry, I know I'm interrupting and this is difficult on the phone. But the primary issue that the board resolved is completely dicta and not relevant if this isn't a contract with the NAFI. And you can't jump over that important, I think, factual argument about whether this is actually a contract with the NAFI. Are you aware of anything in the supplemental briefing that would help us with this question? Or did you all just jump over it too in the supplemental briefing and get straight to slattery? The issue was raised in the supplemental briefing, Your Honor. But again, when looking at the board's decision, there wasn't any analysis of that point. And... That's not... Well, that's not really what I asked. Did you in your supplemental briefing to the board, and I know that this was handled by the agency, probably not you, but did the agency put forth specific evidence why it thought this was a contract with the NAFI beyond the citation to the funding limitations we've already talked about? To my knowledge, they did not, Your Honor. But the one thing I would say about that is that the Air Force and all the military departments have strict regulations as to how non-appropriated funds can be used and dispersed. So the fact that the funding was coming from non-appropriated funds can be dispositive of this issue because... What's your legal support for that? I'm not aware of any case law that says that. Because the question is ultimately whether appropriated funds can be used to satisfy a judgment, isn't it? So even if the initial contract is with non-appropriated funds, if it's with an entity that also has access to appropriated funds that can satisfy a judgment, then it's not a NAFI contract. Are you saying that appropriated fund entities can never use non-appropriated funds for contracts? Your Honor, what I'm saying is that there is a... Yes, but there's a distinction. There's a clear regulatory scheme for how non-appropriated funds can be used. And the distinction I would draw, and again, this is also a distinction with the Flattery decision, is that it's not that the non-appropriated funds would be paid for a judgment-determined jurisdiction. It's that the existence of the non-appropriated funds determine the entity that is in question, in this case, the Air Force Services Agency, and that that entity falls outside the scope of the waiver of sovereign immunity that exists within the CDA. And so the fact that non-appropriated funds were being used for this project, specifically this project, as we discussed in our reply brief, this is why we brought up the issue of military construction, is that the Air Force is prohibited from using appropriated funds for this project because of the requirements, the statutory requirements for military construction projects. So the fact that non-appropriated funds were being used shows that it was not the Air Force that was the counterparty to Parsons. It had to be the AFSBA because the Air Force was prohibited from using these funds...was prohibited from using its own funds to engage in a project of this type. Okay. If there are no further questions, I think we're out of time. Do any of my colleagues have further questions? Hearing none, thank you, Mr. Kaipura. Mr. Hamrick, I think you're over the time, but we'll give you two minutes here. Thank you very much. We view this as a straight-up contract interpretation issue. There is zero evidence in the contract, IEIQ or delivery order, that AFSBA is the contracting party. The government said in one of its briefs that the buildings were built on behalf of AFSBA. They cited page one of Judge Clark's decision. It doesn't... Mr. Hamrick, this is Judge Hughes. There's not zero evidence. I don't want you to overstate the record either. There are definitely the points that the government pointed to that says non-appropriated funds can be used for...are to be used for this contract. Are you aware of legal authority one way or another, and particularly respond to the government's argument that regulations prohibited from using non-appropriated funds for government construction that would suggest that the use of non-appropriated funds is or is not determinative of whether it's with an AFI? Excellent question. And by the way, Judge Hughes, I apologize for talking over you previously. That won't happen again. But the government... It's fine. The government tries to distinguish a contract disputes act or CDA case we cited, U.S. versus General Electric, 727F, second 1567, by arguing that the Air Force, notice they didn't say AFSVA, did not receive appropriations for this particular project at McGuire. But the GE opinion rebuts that project-by-project approach. You don't judge whether the NAFI doctrine applies based on whether appropriated funds were or were not used for a particular contract. The court explained that the NAF doctrine applies only if the activity, the court didn't say the contract, intended to operate without using appropriated funds. And here, just as in the GE case, the Air Force is not an activity that is specifically intended to operate without using appropriated funds. And as you noted, the reference on one page, and I think Appendix 804 in the delivery order to non-appropriated funds does not mention AFSVA. And it certainly does not say that amounts for equitable adjustments like those awarded to Parsons by the ASBCA cannot be paid from appropriated funds. Nothing by Congress prohibits the Department of the Air Force from asking for appropriated funds at this juncture. Suppose the contract said they could only use non-appropriated funds. Would that make it a contract with the NAFI? Under GE, no, because what matters is whether the contracting agency responsible for paying damages, taxpayer money for damages, is walled off from ever receiving appropriated funds. So, you can't go project by project. I don't think that was a response to my question. My question is if they were barred from using appropriated funds and could only use non-appropriated funds for the contract, would that make it a NAFI contract? I don't think it would. And I'll cite another case that we cited, LaFont Plaza Properties. Bear with me one second. What level decision is this? This is from this court. The court stated, this is 668 S. 2nd, 1211. The court stated that the controller, the government agency that was the party to the contract, has been financially self-sufficient, is not dispositive. There must be a clear expression by Congress that the agency was to be separated from general federal revenues. And in Breitbach v. U.S., 500 F. 2nd, 556, this court's predecessor stated there was no clear cleavage between the funds of the St. Lawrence Seaway Development Corporation and those of the United States that one can say that Congress wished to cut the agency loose from the treasury or from appropriated funds. So, it's not a project-by-project determination. Okay. Mr. Hamrick, unless there are further questions from my colleagues, I think we're out of time. Mr. Ticora will give you one minute on the cross-appeal. Thank you, Your Honor. Just the one point that I'd like to make on this. The issue of whether or not the AFSBA was the party in issue, I would say that, at best, it's a mixed question of law and fact. And if the court determines that the record doesn't support the board's finding, that doesn't automatically mean that Parsons' argument is correct, that the Air Force was the party at issue. I would say that the proper recourse in that case would be for a remand for further development of the record and finding from the board on this particular point. Okay. Thank you, Mr. Ticora. Thank you, Mr. Hamrick. The case is adjourned.